## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALEX LEMU,

    *Plaintiff*,

  v.

FACTORY MUTUAL INSURANCE
COMPANY,

    *Defendant*.

Civil Action No. 1:25-cv-02073 (CJN)

## <u>MEMORANDUM OPINION</u>

  Plaintiff Alex Lemu claims that he was constructively discharged by his former employer, Factory Mutual Insurance Company, in violation of public policy.  *See generally* ECF No. 1-2. Factory Mutual moves to dismiss.  *See* ECF No. 11.  The Court grants that motion for the following reasons.

## I.  Background[1]

  Factory Mutual is a commercial property insurer that provides risk-management services to help companies prevent property damage and loss.  *See Services we provide*, FM, https://www.fm.com/solutions/services-we-provide (last visited February 23, 2026).[2]  Lemu worked there as a jurisdictional consultant until May 2025.  ECF No. 1-2 at 3.[3]  In that capacity,

---

[1] Because Lemu proceeds *pro se*, the Court considers the exhibits attached to his Complaint and any allegations made in his opposition to Factory Mutual's motion to dismiss.  *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *infra* at 5–8.

[2] "[A] court may judicially notice a fact that is not subject to 'reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017) (quoting Fed. R. Evid. 201(b)).

[3] All page citations refer to the page numbers that the CM/ECF system generates.

he was responsible for inspecting boilers and pressure vessels at various locations throughout the District of Columbia.  *See id.* at 4; *see generally id.*

In late 2024, Lemu notified his manager and the scheduling team that 157 boilers and pressure vessels were overdue for inspection, including a boiler at Sibley Memorial Hospital.  ECF No. 1-2 at 3, 7–10.  He requested that the team start scheduling inspections in D.C.  *Id.* at 10.  Lemu's manager responded that Factory Mutual was prioritizing other locations but would address D.C. within a few weeks.  *Id.* at 7.

In March 2025, Lemu emailed his manager, a senior account engineer, and a scheduling specialist about difficulty he was having scheduling an inspection at Sibley.  *Id.* at 13.  The senior account engineer forwarded Lemu's message to a Sibley employee who directed Lemu and the senior account engineer to the appropriate Sibley personnel.  *Id.* at 12–13.  Lemu's filings do not indicate whether he ever contacted those individuals or scheduled an inspection there.  *See generally* ECF No. 1-2.  He did, however, tell his manager that Factory Mutual was obligated to report its untimely inspection of Sibley to the D.C. Department of Buildings.  ECF No. 15 at 1.

On April 2, 2025, a boiler at Sibley sustained damage following a low-water failure incident.  ECF No. 1-2 at 5.  After the incident, Lemu felt "a moral and professional obligation to report what [happened] to the appropriate authority despite [the Company's] objection," so he informed the D.C. Department of Buildings "via telephone."  ECF No. 15 at 1.  His pleadings do not allege that anyone at Factory Mutual knew that he contacted the Department, nor do they specify when the call occurred.

Later that month, Factory Mutual convened a meeting regarding the incident, during which Lemu's manager accused him of failing to timely escalate inspection scheduling difficulties.  ECF No. 15 at 2; *see* ECF No. 1-2 at 5–6.  A few days later, while inspecting the boiler at Sibley, the

manager made similar comments in front of a Sibley employee.  ECF No. 15 at 2.  Lemu also alleges that in May, during a company Microsoft Teams call, he was falsely accused of "manipulating the events on [his] calendar" and subjected to what he describes as "defamation and psychological torture."  *Id.*

On May 22, 2025, Factory Mutual issued Lemu a "Final Written Warning."  ECF No. 1-2 at 5–6.  That letter stated that Lemu had failed both to timely escalate the inspection scheduling difficulties for the Sibley boiler and to report an incident with a boiler at another location.  *Id.* at 5.  The letter advised Lemu that further performance deficiencies could result in his termination.  *Id.* at 5–6.  Lemu disputes the accuracy of the accusations and contends that others were responsible for scheduling inspections.  *Id.* at 4.  He refused to countersign the letter and resigned (allegedly under duress).  *Id.* at 3–4.

A few weeks later, Lemu filed this action in D.C. Superior Court, which Factory Mutual then removed here.  *See id.* at 1; ECF No. 2.  Factory Mutual now moves to dismiss under Rule 12(b)(6).  *See* ECF No. 11-1.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  But the rule that courts "must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

At this stage, the Court "accept[s] the operative complaint's well-pleaded factual allegations as true and draw[s] all reasonable inferences" in the plaintiff's favor. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). It "may also consider any documents either attached to or incorporated in the complaint." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 529 (D.C. Cir. 2025) (internal quotation marks omitted). A *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). And the Court must "consider a *pro se* litigant's complaint in light of all filings, including filings responsive to a motion to dismiss." *Id.* (internal quotation marks omitted) (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015)).

### III.    Analysis

Factory Mutual presents various arguments in its motion, but the Court only addresses two: Lemu's failure plausibly to allege that he was constructively discharged, and Lemu's failure to link his discharge to a clear public policy mandate.

### A. Constructive Discharge

Lemu concedes that Factory Mutual did not expressly terminate his employment, but instead contends his resignation was a constructive discharge. *See generally* ECF No. 1-2. "To allege constructive discharge," however, Lemu "must show 'that (1) intentional discrimination existed, (2) [Factory Mutual] deliberately made working conditions intolerable, and (3) aggravating factors justified [Lemu's] conclusion that [he] had no option but to'" resign. *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp. 3d 336, 346 (D.D.C. 2016) (quoting *Douglas–Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011)). Allegations of a hostile work environment are insufficient. *See Valentine v. Towers Condo. Ass'n*, No. 22-cv-3216, 2024 WL

1299462, at *3 (D.D.C. Mar. 26, 2024).  Rather, a plaintiff like Lemu "must show that the employer deliberately created intolerable work conditions that forced the plaintiff to quit." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006).  "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"  *Id.* (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). Instances "'where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination' indicative of a deliberate effort to drive the employee out." *Valentine*, 2024 WL 1299462, at *3 (quoting *Robinson v. Ergo Sols, LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015)).

Lemu's allegations fall short of this standard.  Lemu first claims that he "resigned under duress" after refusing to sign a letter from Factory Mutual "with an explicit threat of termination." ECF No. 1-2 at 3.  But "when a written instrument is attached to a complaint and it contradicts the allegations in the complaint, the written instrument controls."  *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 26 (D.D.C. 2015) (citing 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil 3d* § 1327, 450–51 (3d ed. 2004)).  And here, the Final Written Warning attached to Lemu's Complaint does not contain an explicit threat of termination.  ECF No. 1-2 at 5–6. Rather, it states: "If you are responsible for another incident occurring of this nature, it *would be grounds* for immediate termination of your employment."  *Id.* at 6 (emphasis added).  The closest it gets to threatening termination is when it conveys that failure to comply with Factory Mutual's expectations for its employees "will result in termination."  *Id.*  But requiring Lemu to sign a letter conditioning his continued employment on compliance with company policies falls far short of rendering his working conditions so objectively intolerable that a reasonable employee would have felt compelled to resign.  *See Walden*, 177 F. Supp. 3d at 346 (holding that a plaintiff who received

a negative performance review and was required to sign a performance improvement plan did not establish constructive discharge).

Lemu also alleges that Factory Mutual disseminated misleading and defamatory information about his job performance at various meetings. *See* ECF No. 15 at 2. According to Lemu, management personnel falsely accused him of "manipulating the events on [his] calendar" and not timely escalating the scheduling difficulties at Sibley. *See id.* Most of Lemu's allegations are conclusory statements that do not provide sufficient factual details to survive a motion to dismiss. *See, e.g., id.* (Lemu alleges that his manager unleashed an "irrational defamation campaign against [him] in the presence of" a Sibley employee but does not state what his manager said). And the allegations that do contain relevant details do not amount to "aggravating factors which would justify [Lemu's] conclusion that [he] had to resign." *Walden*, 177 F. Supp. 3d at 346. "[A]ggravating factors can include 'historic discrimination' over a period of several years, 'repeated but futile attempts' to remedy the discrimination, and 'humiliation and loss of prestige' precipitated by the failure to obtain redress." *Floyd v. Lee*, 85 F. Supp. 3d 482, 521 (D.D.C. 2015) (quoting *Clark v. Marsh*, 665 F.2d 1168, 1175–76 (D.C. Cir. 1981)). Lemu has not alleged that kind of extreme conduct here.

## B.  Public Policy At-Will Exception

Even if Lemu had plausibly alleged that he was constructively discharged, he fails to allege that Factory Mutual forced him to choose between violating the law and losing his job, and he also fails to identify a clear mandate of public policy closely connected to his purportedly involuntary resignation.

Employment in the District of Columbia is generally at-will, meaning "an employer may discharge an [ ] employee at any time and for any reason, or for no reason at all." *Adams v. George*

*W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991); *Bilal-Edwards v. United Plan. Org.*, 896 F. Supp. 2d 88, 93–94 (D.D.C. 2012).  But, "[i]n *Adams*, the District of Columbia Court of Appeals articulated a 'very narrow exception' to [that] rule, allowing a discharged at-will employee to sue his former employer 'when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation.'"  *Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d 87, 101–02 (D.D.C. 2007) (quoting *Adams*, 597 A.2d at 34).  Here, Lemu's allegations do not fall within the "narrow exception" recognized in *Adams*, as he does not allege that Factory Mutual forced him to choose between violating the law and losing his job.  If anything, the "Final Written Warning" suggests that Factory Mutual sought to ensure that he complied with D.C. Code inspection requirements going forward.  *See* ECF No. 1-2 at 5–6.

    D.C. courts also recognize wrongful-discharge claims where an employee's termination violates a clear mandate of public policy "firmly anchored in either the Constitution or in a statute or regulation."  *Warren v. Coastal Int'l Secs., Inc.,* 96 F. App'x. 722, 722 (D.C. Cir. 2004) (quoting *Fingerhut v. Child.'s Nat'l Med. Ctr.*, 738 A.2d 799, 803 n.7 (D.C. 1999)).  "[T]o be cognizable, 'there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.'"  *Id.* at 722–23 (quoting *Fingerhut*, 738 A.2d at 803 n.7).

    Even liberally construed, Lemu's filings do not allege that Factory Mutual terminated his employment in violation of a clear mandate of public policy.  Lemu states that Factory Mutual violated D.C. Code § 2-107 and D.C. Mechanical Code § 1003.15 by failing to timely inspect Sibley, and that he urged his manager to report the violation but ultimately did so himself.  *See* ECF No. 15 at 1.  At most, these allegations suggest that Lemu believes he was terminated after reporting potential code violations.  But he never alleges that Factory Mutual constructively discharged him because of that reporting.  His complaint and opposition brief are silent as to

whether the Company even knew that he "informed DC DOB Chief Boiler Inspector, Mr. Keith Jones, via telephone" of the violation. *Id.* Regardless, even if Lemu had alleged that the Company knew of his reporting and that it led to his involuntary resignation, he does not identify any clear mandate of public policy that the alleged termination violated. *See Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 729 F. Supp. 2d 304, 326 (D.D.C. 2010) ("Even if one accepts plaintiff's account of himself as a whistleblower punished for his good deeds, plaintiff is unable to identify an appropriate public policy on which to base his claim."); *Davis*, 525 F. Supp. 2d at 102 ("[I]n the absence of any identified public policy, the Court clearly cannot conclude that the public policy relied upon is firmly anchored in the Constitution or a statute or regulation." (internal quotation marks omitted)).

## IV.    Conclusion

For the foregoing reasons, the Court grants Factory Mutual's motion to dismiss. A separate Order will accompany this Memorandum Opinion.

DATE: February 26, 2026

CARL J. NICHOLS
United States District Judge